## Magdelena Dorfner v. Louis Waldorf.

1. EQUITABLE LIENS—*Of a Widow After Releasing Her Dower and Homestead.*—A widow released her rights of homestead and dower for the purpose of mortgaging lands to a person for funds to assist an insolvent daughter in paying her debts and enabling her to continue in business. The object for which the mortgage was given failed, and the funds to be obtained remained in the hands of the mortgagee; the lands passed into the hands of the daughter's assignee and were sold by him, subject to the mortgage and diminished by its amount, as assets for the payment of the daughter's debts. *It was held* that the widow was entitled to all the benefit of the funds remaining in the hands of the mortgagee which could equitably be given her.

**Appeal** from the County Court of LaSalle County; the Hon. H. W. JOHNSON, Judge, presiding. Heard in this court at the October term, 1899. Reversed and remanded with directions. Opinion filed February 1, 1900.

FRED T. BEERS, attorney for appellant.

LINCOLN & STEAD, attorneys for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

On January 4, 1898, Magdelena Eck, a daughter of appellant, Magdelena Dorfner, was the proprietor of a general store for the sale of merchandise at Troy Grove, Illinois.

She was indebted to a considerable amount and, being pressed for payment by several of her creditors, on that date executed to Louis Waldorf, the vice-president of the Mendota National Bank, to which institution she was indebted, her mortgage for $2,000 upon certain real estate which she owned, for the purpose of procuring money to pay the amount she owed said bank and certain other urgent indebtedness. In this mortgage appellant, who had a homestead and dower interest in said real estate, joined for the purpose of assisting her daughter in raising the money. While the mortgage was executed to Waldorf, the money was to have been really furnished by the bank, and after the execution of the mortgage, Crawford, the president of the bank, guaranteed the payment of certain amounts she owed to John A. Lamberton and the First National Bank of Mendota, and these debts have since been paid by his bank. The mortgage was mailed for record by the attorney for the bank that night or early next morning, and was entered of record January 5, 1898, at 1:30 P. M. On the day the mortgage was recorded, Deane Bros. & Lincoln, wholesale merchants, to whom Mrs. Eck was indebted, obtained two judgments against her in the Circuit Court of LaSalle County, one for $220 and the other for $385.70, on which judgments executions were issued to the sheriff and indorsed by him as received January 5, 1898, at 2:10 P. M. On the next day, January 6th, Mrs. Eck applied to the Mendota National Bank for her money, but, it having been discovered that a judgment had been entered against her on the day previous, Crawford, who was acting for the bank, refused to give it to her. The next day, however, Crawford, the president, and Waldorf, the vice-president of the Mendota National Bank, called on Mrs. Eck at her home in Troy Grove, and for some reason Waldorf then gave her a check for the $2,000, and she delivered it to Crawford. It does not clearly

appear why the check was turned over to Crawford, though the latter claims it was done for the purpose of protecting Mrs. Eck from other creditors.

It also appears from the testimony of the two bank officers that they told Mrs. Eck they would hold the mortgage until all claims were settled, and as soon as they got their money back they would release the mortgage. As a matter of fact no money was ever paid her in person upon the check. On January 6, 1898, John Ferguson obtained a judgment in the County Court against Mrs. Eck for the sum of $543.28, and afterward on the same day the Mendota National Bank recovered two judgments against her in the same court, amounting to $1,017.70. Later, on the same day, appellant also recovered a judgment against Mrs. Eck in the Circuit Court for the sum of $1,601.57. Upon all of these judgments executions were issued and received by the sheriff in the order in which they were rendered.

On January 7, 1898, the sheriff levied the executions then in his hands upon the chattel property of Mrs. Eck and took possession of her store at Troy Grove. The next day, January 8th, John A. Lamberton recovered a judgment in the Circuit Court against Mrs. Eck for the sum of $117.19, upon which execution was issued and indorsed by the sheriff as received by him at 9:10 A. M., and on the same day the First National Bank of Mendota recovered a judgment in the same court against her for the sum of $176.98, upon which execution was also issued to the sheriff and indorsed by him as received at 9:20 A. M. On January 10, 1898, Magdelena Eck made an assignment of all her property for the benefit of her creditors to Fred J. Engleman, who duly qualified as assignee and is still so acting. On January 17, 1898, all the execution creditors above named filed an agreement in the County Court, whereby they consented to an order directing the sheriff to turn over to the assignee all of the goods and chattels levied on by him by virtue of said executions, subject, however, to the liens of said executions, and the exemptions of said Magdelena Eck, on condition that the moneys arising from the sale of the same should be first

applied toward the payment of said executions, according to the priorities of their respective liens. Accordingly the County Court entered an order fixing the priorities of said execution creditors in the order in which their judgments were obtained, as above set forth, and directing that the property levied upon be turned over to the assignee. It also directed the assignee to sell the property, pay the costs of sale and bring the remainder of the money into court. The stock has since been sold by the assignee and he has $2,369.07 derived therefrom, on hand, subject to the order of the court. The land mortgaged was inventoried and sold by the assignee for $300, subject to the $2,000 lien, and he has never received anything on account of said mortgage. On May 11, 1899, appellant filed her petition in the County Court alleging that said agreement was entered into without her knowledge or consent, and that no one had authority to attach her name thereto; that by reason of her judgment and execution she has a prior lien upon the personal property of Mrs. Eck; that she has never consented to the surrender to the assignee of the goods and chattels of Mrs. Eck levied upon by the sheriff; that the surrender of the same was a wrong and fraud upon her rights; that she has an equitable and legal lien against the money in the hands of the assignee derived from the sale of said goods to the amount of her judgment, interest and costs, and praying that her legal rights and priority might be determined.

Appellant further states in her petition the existence of the mortgage of $2,000; charges that Waldorf paid said sum to Mrs. Eck and placed it to her credit as her money in the Mendota National Bank; that the bank officers conspiring for their own benefit and to the wrong and injury of Mrs. Eck and her creditors, have refused to pay out said money to Mrs. Eck, that she might turn the same over to her assignee; that the assignee has long known that said bank had $2,000 belonging to Mrs. Eck, but that he conspired with the bank and Gardner, his attorney, who was also attorney for many of the judgment creditors, to withhold said sum from the estate of Mrs. Eck; that by reason of her

diligence and discovery, appellant is entitled to be paid her judgment and interest out of said $2,000 as a preferred creditor over all other creditors of said insolvent. She therefore prays that said assignee may be removed and a new one appointed, with directions to collect the $2,000, and out of the same satisfy appellant's judgment. The petition also contains a prayer that the court will cause the matters and things therein complained of, to be examined into and determined, and that the rights and interests of all the parties therein referred to, may be fully discovered and determined according to their lawful and equitable rights, priorities and standing, and that she may be granted such other and further relief in the premises as the law may direct and equity shall demand, etc.

The court, upon the hearing, denied the prayer of the petition and ordered the same dismissed at appellant's cost. Appellant excepted and appealed to this court.

We hold in this case, first, that the prayer of that part of the petition which seeks, in effect, to set aside the agreement between the creditors to take the assets from the hands of the sheriff, and deliver them to the assignee to sell and satisfy the judgments in the order of their priority, should be denied. The reason given by appellant why the agreement should be set aside, is that the attorney, Gardner, who signed the same for her, had no authority to do so. He was, however, her attorney of record in the procurement of the judgment upon which the execution was issued, and she is still claiming the advantage of that judgment which he obtained for her, while denying his right to represent her in signing the agreement with the other creditors. The agreement did not disturb the priorities of the several judgment creditors as they existed at law, nor affect their rights as to each other in any respect. It simply provided that the assignee should make the sale and distribute the proceeds, instead of the sheriff. In signing the agreement, Gardner only exercised his discretion as to the best manner of collecting the debt, and for that purpose he had implied authority, under the circumstances of the case, to act for appellant.

The proof does not show that appellant's interests were injured in the least by the agreement, and there is no reason why the same should be set aside. It also follows from what has been above said, that no reason appears from the proofs why appellant's claim should be made a prior lien over that of the other creditors, on the assets now in the hands of the assignee.

Second. As to the mortgage for $2,000 given by Mrs. Eck and appellant to Waldorf for the Mendota National Bank, we think appellant is entitled to some relief. She had homestead and dower in the mortgaged premises which she released for the purpose of assisting her daughter in obtaining money to pay debts and continue in business. The money was not obtained, the object for which the mortgage was given, failed, and the daughter did not get the expected relief. The real estate having been sold subject to the mortgage indebtedness, the assets in the hands of the assignee for the creditors were thereby diminished to that extent. Appellant is therefore entitled to all the benefit of the fund held by the bank, which can equitably be given her.

The bank claims to hold the fund as security for the indebtedness due it on its judgment and also for the amounts paid by it for Mrs. Eck to the First National Bank of Mendota and Lamberton. It is inequitable that the bank should retain both the mortgage and the $2,000 it was given to secure, and which is more than sufficient to pay all its indebtedness, and also have a share in the assets in the hands of the assignee. Crawford, the president of the bank, took the check from Mrs. Eck, and the fact that the transaction was intended to deceive some one else, does not relieve the bank from responsibility. The transaction was conducted for the benefit of the bank by its officers and we must treat it as, in effect, a deposit of $2,000 in the bank for Mrs. Eck. Under the agreement between Mrs. Eck and the bank officials, however, we think the bank should be permitted to retain out of the funds a sufficient amount to pay its judgment against her and also the judgments in favor of the First National Bank and Lamberton, which it guaranteed and paid, but without interest from the time the

mortgage was given to Waldorf. The portion of the fund remaining after the payment of these debts belongs to the assignee of Mrs. Eck for the benefit of her creditors, the title having passed to him by the act of assignment. Appellant's execution is fourth in the order of precedence recognized by the County Court under the agreement above referred to, and when the assignee shall have collected the balance due him from the Mendota National Bank, as above indicated, there should be sufficient funds in his hands, with what he has already received, to pay her debt, together with those which have priority over hers in full.

The order of the County Court, in dismissing appellant's petition, is reversed and the cause remanded, with directions to that court to enter an order in conformity with the views of this court as above expressed. Reversed and remanded with directions.